# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL D. MARLIN,<br><br>        Plaintiff,<br><br>vs.<br><br>TRANS UNION LLC, EQUIFAX INFORMATION SERVICES, LLC, EDFINANCIAL SERVICES, LLC, and UNITED STATES DEPARTMENT OF EDUCATION;<br><br>        Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Michael D. Marlin ("Plaintiff" or "Mr. Marlin"), by and through the undersigned counsel, brings this civil rights action on an individual basis against Trans Union, LLC ("Trans Union"); Equifax Information Services, LLC ("Equifax") (together, Equifax and Trans Union are the "CRA Defendants"); EdFinancial Services, LLC ("EFS"); and the United States Department of Education ("DOE") (together, EFS and DOE are the "Furnisher Defendants"), for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), and alleges as follows:

## INTRODUCTION

1. In this action, the CRA Defendants falsely reported to Plaintiff's potential creditors that Plaintiff was liable for a number of student loan accounts that in fact resulted from identity theft, in violation of 15 U.S.C. § 1681e(b). Both CRA Defendants also failed to conduct reasonable reinvestigation(s) to determine whether information Plaintiff disputed was inaccurate and failed to

1

block, correct, and/or delete the disputed information from Plaintiff's credit file, in violation of 15 U.S.C. §§ 1681c-2 and 1681i.

2. Moreover, in this action, the Furnisher Defendants failed to reasonably investigate Plaintiff's disputes and review all relevant information provided by Plaintiff and/or each CRA Defendant, in violation of 15 U.S.C. § 1681s-2(b).

## BACKGROUND

3. In 1970, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), requiring consumer reporting agencies ("CRAs") to implement and utilize reasonable procedures "to assure **maximum possible accuracy**" of the personal, private, and financial information that they compile and sell about individual consumers. 15 U.S.C. § 1681e(b) (emphasis added).

4. In doing so, Congress recognized that:

> [the] banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

15 U.S.C. § 1681(a)(1).

5. Accordingly, the FCRA helps ensure that CRAs "exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). CRAs' procedures should be "reasonable," i.e., "fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of [] information." 15 U.S.C. § 1681(b).

6. The preservation of one's good name and reputation is at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 Cong. Rec. 36570 (1970)).

7. As society's "trend toward computerization" intensifies, the FCRA's relevance has only grown. In 2024, a unanimous Supreme Court—discussing the "importance of accuracy in credit reporting"—agreed that, today, "[a] credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business." *Department of Agriculture Rural Development Rural Housing Service v. Kirtz*, 601 U.S. ___ (2024) (holding §1681s-2(b) applies to federal agencies like DOE).

8. The FCRA is meant to ensure that such consumers are given a fair shake, but *Kirtz* cited findings that "over 34% of consumers [] were able to identify at least one error in their credit reports." *Id.* The Court agreed that "[m]istakes like these can lead lenders to insist on higher interest rates or other terms that make it difficult or impossible for consumers to obtain a mortgage, auto loan, student loan, or other credit." *Id.* (internal quotations omitted).

9. In 2022, a bipartisan congressional subcommittee called on the CFPB to investigate "longstanding problems with the practices employed by the [CRAs] in responding to consumers who challenge credit reporting errors"—opining that "consumers are experiencing no small measure of stress, frustration, and financial hardship as a result of the [CRAs'] failure to correct legitimate errors on their credit reports." *Letter to the Honorable Rohit Chopra*, House Select Subcommittee on the Coronavirus Crisis, 117th Congress (October 13, 2022).

3

## PARTIES

10. Michael D. Marlin is a natural person residing in Watertown, Tennessee, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

11. Equifax is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of Tennessee, including within this District. Equifax can be served at its registered agent Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

12. Trans Union is a limited liability company with a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661, and is authorized to do business in the State of Tennessee, including within this District. Trans Union can be served through its registered agent, Illinois Corporation Service Company located at 801 Adlai Stevenson Drive Springfield, Illinois 62703. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

13. EFS is a student loan servicer with its principal place of business located at 298 North Seven Oaks Drive, Knoxville, Tennessee 37922, and it is authorized to do business in this district. EdFinancial is a furnisher of consumer information under the FCRA.

14. DOE is a federal agency with Headquarters located at 400 Maryland Avenue SW, Washington DC 20202 that does business in the State of Tennessee, including in this district. DOE is a furnisher of consumer information under the FCRA.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p (allowing FCRA claims to be brought in any "court of competent jurisdiction").

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### The False Loans at Issue

17.     Upon information and belief, Plaintiff Michael D. Marlin is a victim of identity theft and/or mixed credit reporting.

18.     Student loan accounts, apparently in Plaintiff's name, were opened on February 12, 2018, and September 24, 2019, without Plaintiff's knowledge or authorization.

19.     These student loan account fell into default and became derogatory tradelines on Plaintiff's credit reports with both CRA Defendants.

20.     Plaintiff filed a police report about these accounts on July 19, 2020, soon after he discovered them.

21.     Upon information and belief, the student loans at issue were opened for academic school year of 2017–2018, at Bossier Parish Community College ("BPCC")[1] in Louisiana. Plaintiff never attended that school and never lived in Louisiana.

22.     In fact, Plaintiff was incarcerated in Williamson County, Tennessee, for a driving-related offense during the entire 2017–2018 school year, such that it would have been impossible for him to be studying at BPCC during that time.

23.     Upon information and belief, the student loans at issue were associated with an Arcadia, Florida address that does not belong to Plaintiff. Plaintiff has never lived in Florida.

24.     Upon information and belief, the promissory note at issue on its face could not have been Plaintiff's. Upon information and belief, the promissory note at issue lists one Christine

---

[1] The former comptroller for BPCC pleaded guilty to a conspiracy to commit wire fraud on July 20, 2020.

Marlin as the applicant's grandmother on the Promissory Note. Christine Marlin is not Plaintiff's grandmother. Upon information and belief, Christine Marlin was born in 1969. Plaintiff was born in 1987, which would mean that, according to the promissory note, his grandmother Christine Marlin would have been about twenty years of age when she became Plaintiff's grandmother: an impossibility.

25. Upon information and belief, either someone stole Plaintiff's identity to open the student loans at issue, or one or both of the Furnisher Defendants mixed Plaintiff up with the actual applicant, likely due to a failure to solicit adequate identifying information at the time the loan was opened.

26. Plaintiff also noticed the 1300 NE Oak St, Arcadia, Florida, 34266, and the phone number (931) 374-7115.

**Plaintiff's Disputes to the CRA Defendants, and Failure to Reinvestigate**

27. In or about October 2024, both CRA Defendants, as well as nonparty Experian Information Solutions, Inc., received dispute letters from Plaintiff.

28. The detailed dispute letter, sent by Plaintiff, enclosed adequate identifying information; Plaintiff's 2020 police report; and an FTC Identity Theft Report filed by Plaintiff on July 19, 2024 in which Plaintiff reported each of the fraudulent tradelines as well as the fraudulent address and phone number.

29. In response to the dispute letter, nonparty Experian Information Solutions, Inc., removed the false accounts. By contrast, the CRA Defendants did not.

30. Trans Union failed to block the disputed information, and on October 23, 2024, Trans Union told Plaintiff that it had "verified" each account "as accurate."

31. Equifax received Plaintiff's dispute letter, as confirmed by USPS, on October 7, 2024. However, Equifax failed to block or correct the disputed information.

**The Furnisher Defendants' Failure to Investigate**

32. Upon information and belief, EFS and DOE both received notice of Plaintiff's disputes from Trans Union.

33. Upon information and belief, EFS and DOE both sent ACDVs in which they "verified" the false information they were furnishing about Plaintiff.

**Damages**

34. Both CRA Defendants published Plaintiff's credit reports, bearing the false information, to third parties, including but not limited to Capital One.

35. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from Plaintiff's good credit rating; detriment to Plaintiff's credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

36. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein. At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, and/or reckless, and in disregard of federal law and the rights of Plaintiff herein.

//

# CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Each CRA Defendant)

37. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

38. Each CRA Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure "maximum possible accuracy" in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

39. Each CRA Defendant's separate and independent violations were willful, rendering each CRA Defendant liable for actual and/or statutory damages, as well as punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. Alternatively, these violations were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

40. Plaintiff is entitled to recover attorneys' fees and costs from each CRA Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Second Claim for Relief Against Each CRA Defendant)

41. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

42. Each CRA Defendant violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigation(s) of Plaintiff's dispute(s) and by failing to maintain reasonable procedures to investigate Plaintiff's dispute(s).

43. Each CRA Defendant's separate and independent violations were willful, rendering each CRA Defendant liable for actual and/or statutory damages, as well as punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. Alternatively, these violations were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

44. Plaintiff is entitled to recover attorneys' fees and costs from each CRA Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information
### (Third Claim for Relief Against Each CRA Defendant)

45. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

46. Each CRA Defendant violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information, caused by identity theft, from Plaintiff's file.

47. Each CRA Defendant's violations were willful, rendering each CRA Defendant liable for actual or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, each CRA Defendant's violations were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

48. Plaintiff is entitled to recover attorneys' fees and costs from each CRA Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT IV
## 15 U.S.C. § 1681s-2(b)
### Failure to Reasonably Investigate Dispute and Review all Relevant Information Provided by the Consumer
### (Only Claim for Relief Against Furnisher Defendants)

49. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

50. Each Furnisher Defendant violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s); by failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the CRA Defendants; and by failing to cease furnishing inaccurate information relating to Plaintiff to the CRA Defendants.

51. Each Furnisher Defendant's violations were willful, rendering each Furnisher Defendant liable for actual and/or statutory damages, as well as punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. Alternatively, these violations were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

52. Plaintiff is entitled to recover attorneys' fees and costs from each Furnisher Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that each Defendant negligently and/or willfully violated the FCRA;

ii. Awarding against each Defendant actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA;

iv. Ordering the CRA Defendants to:

   a. immediately and permanently (i) delete all inaccurate information from Plaintiff's credit reports and files, and (ii) cease reporting the inaccurate information to any

and all persons and entities to whom any CRA Defendant reported consumer credit information; and

    b. send updated and corrected credit report information to all persons and entities to whom any CRA Defendant reported inaccurate information about Plaintiff within the last three years; and

v. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted this: February 7, 2025,

*/s/ Daniel Cohen*
Daniel Cohen, NY Bar # 5481460
CONSUMER ATTORNEYS
68-29 Main Street
Flushing, NY 11367
Telephone: (718) 770-7901
Fax: (718) 715-1750
E: dcohen@consumerattorneys.com

*/s/ William M. Kaludis*
William M. Kaludis, TBPR#17433
SHIELD LAW GROUP
515 Maryland Way, Suite 911
Brentwood, TN 37027
T: (615) 742-8020
E: bill@shieldlawgroup.com

*Attorneys for Plaintiff,*
*Michael D Marlin*

11